**Kermit D. SMITH, et al.   Plaintiffs**

**v.**

**WAL–MART STORES, INC., et al.   Defendants**

**No. CIV.A. 3:03CV538LN.**

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 31, 2003.

Delano Funches, Funches & Associates, Jackson, MS, for Plaintiffs.

Walter J. Brand, Kenneth E. Milam, Amy Camille Felder, Watkins & Eager, Jackson, MS, Edward Blackmon, Jr., Blackmon & Blackmon Law Firm, Canton, MS, for Defendants.

---

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on plaintiffs' motion to remand pursuant to 28 U.S.C. § 1447. Defendants Wal–Mart Stores, Inc. (Wal–Mart) and Sam's Club, Inc. (Sam's) have responded in opposition to the motion, and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that plaintiffs' motion should be granted for reasons that follow.

On December 31, 2002, the sixty-two plaintiffs, all current or former employees of Wal–Mart or Sam's at various locations throughout Mississippi, filed suit in the Circuit Court of Holmes County, Mississippi against Wal–Mart, Sam's and twenty-nine individuals identified as managers of Wal–Mart or Sam's during the periods of the respective plaintiffs' employment. In their complaint, plaintiffs alleged claims of intentional interference with contractual rights, conversion, fraud, fraudulent concealment, civil conspiracy and breach of contract based on allegations that plaintiffs were not properly compensated for all the hours they worked because defendants either manipulated their time sheets to reflect they had worked less time than they actually had or required plaintiffs to work "off the clock." Additionally, plaintiffs asserted a claim of false imprisonment based on allegations that at times, they were locked in the store and not allowed to leave.

Defendants timely removed the case on the basis of diversity jurisdiction, contending that the individual defendants, all of whom were alleged by plaintiffs to be residents of Mississippi, have been fraudulently joined to defeat diversity. Plaintiffs promptly moved to remand, claiming that they have asserted cognizable claims against these resident/nondiverse defendants, who thus cannot be found to have been fraudulently joined.

At the outset, the court notes that this case is one of a number of multiple-plaintiff cases filed in state courts throughout Mississippi against Wal–Mart and Sam's based on identical allegations, and these other cases have been removed, like this one, on the basis that the resident manager defendants have been fraudulently joined. In *Sago v. Wal–Mart Stores, et al.*, Civil Action No. 3:03CV536BN (S.D.Miss. Sept. 3, 2003), *Robinson v. Wal–Mart Stores, Inc., et al.*, Civil Action No. 3:03CV537BN (S.D.Miss. Sept. 8, 2003), and *Winters v. Wal–Mart Stores, Inc., et al.*, Civil Action No. 3:02CV1171WS (S.D.Miss. Sept. 23, 2003), Judges Barbour and Wingate remanded similar cases, upon finding that plaintiffs had at least stated a cognizable claim against the manager defendants for interference with contractual relationships between plaintiffs and the corporate defendants, Wal–Mart and Sam's. In *Sago*, Judge Barbour first concluded that "at a minimum, an implied contract existed between the plaintiffs and the corporate Defendants, ... at least to the extent that the corporate Defendants [were] contractually obligated to compensate the Plaintiffs for the hours that they worked." *Sago*, No. 3:03CV536BN, slip op. at 9–10. He then concluded, citing *Morrison v. Mississippi Enterprise for Technology, Inc.*, 798 So.2d 567, 574–75 (Miss.App.2001), that a Mississippi court could reasonably find that the individual defendants interfered with the plaintiffs' contractual relationships with Wal–Mart and Sam's. *Id.* at 10–12. *See Morrison*, 798 So.2d at 574–75 (holding that (1) tortious interference with at-will employment can be the basis of a claim; (2) one holding a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to

interfere with his principal's contractual relationship with a third party; and (3) bad faith exists when there is intermeddling in the contractual relationship without right or justifiable cause). Specifically, Judge Barbour held that

> if the individual Defendants had no *justifiable cause* for tampering with Plaintiff's time sheets or the alleged requirement that Plaintiffs work "off the clock," then a reasonable possibility exists that a Mississippi state court could hold the individual Defendants liable for Plaintiff's intentional interference with contract claims. The Court can conceive of no possible scenario under which a supervisor could justifiably require employees to work while clocked out, and/or for supervisor to tamper with the time sheet of an employee. The court therefore finds that a Mississippi state court could find that the individual defendants are liable to Plaintiffs for the intentional [interference] with contract claim.

*Sago,* No. 3:03CV536BN, slip op. at 12. In *Robinson,* Judge Barbour reiterated his holding in *Sago,* and in *Winters,* Judge Wingate concluded, based on the reasoning of *Sago,* that the individual defendants were not fraudulently joined. *See Travis v. Irby,* 326 F.3d 644, 647 (5th Cir.2003) (question in fraudulent joinder analysis is whether plaintiff has reasonable possibility of recovery against resident defendant).[1]

■ This court agrees with the reasoning in *Sago* regarding the viability under Mississippi law of a claim for intentional interference with contractual relationship against managerial personnel based on the facts alleged in plaintiffs' complaint. This case, though, involves additional considerations and issues not presented in *Sago, Robinson* or *Winters,* because here, unlike in those cases, defendants have presented evidence which they submit conclusively demonstrates that, despite the sufficiency of the *allegations* in their complaint, the true facts preclude any reasonable conclusion that plaintiffs have a basis for recovery against any of the resident defendants. That is, defendants have undertaken to show, essentially by a process of elimination, that no plaintiff has any claim against any resident defendant.

In this regard, defendants have presented proof, unchallenged by plaintiffs, that four of the twenty-nine named defendants are residents, and hence presumably citizens, of states other than Mississippi so that their joinder in this cause is immaterial to the fraudulent joinder issue.[2] They also point out that the complaint identifies another putative defendant simply as "David," both in the style and in the body of the complaint. In the court's opinion, with no better identification than this, this defendant may appropriately be treated as a John Doe defendant, since naming "David" is tantamount to not identifying the defendant at all.

---

1. Based on their conclusions in this regard, Judge Barbour and Judge Wingate found it unnecessary to analyze the other counts of the complaint to determine whether there were any other potentially viable claims against the resident defendants. It is unlikely, however, that any of the other claims asserted by plaintiffs, a number of which appear to be directed solely against Wal–Mart and Sam's, would be actionable against the resident defendants.

2. Those defendants are Roland Dixon, Taurus Rice, Brian Speath and Mark Herring. Defendants have also presented an affidavit attesting that they have been unsuccessful in locating "the following named individual defendants: Leland Newman, David Henley and Barry Herndon," and hence, have been unable to determine the state or states in which these persons reside. However, plaintiffs' complaint does not list Leland Newman, David Henley or Barry Herndon as defendants.

Additionally, along with their response to plaintiffs' motion to remand, defendants have presented affidavits from thirteen of the named defendants wherein these defendants identify which, if any, of the named plaintiffs have ever worked in a store where such defendant was employed as a manager or assistant manager, and each of these affiants affirmatively states that (a) none of the remaining plaintiffs ever worked in a store that he/she managed, and that (b) as regards the claims of any plaintiffs who may have worked under them, the affiant never committed any of the acts claimed by plaintiffs in that he/she never altered the time records of the plaintiffs or any other employee of Wal–Mart and never requested employees, including any plaintiffs, to perform any work for which they were not paid, and that he/she never prevented any plaintiff or other employee of Wal–Mart from leaving the store at any time. Based on these affidavits, which plaintiffs have not challenged, it is clear that none of the plaintiffs could possibly have any basis for recovery against these affiants.[3]

That leaves eleven defendants. With reference to these, defendants have presented evidence, in the form of an affidavit from Robert Rodier, Wal–Mart's Strategy Manager for Payroll at Wal–Mart's headquarters in Bentonville, Arkansas, who states that seven of these persons "do not appear in [Wal–Mart's or Sam's] payroll databases as having been employed by Wal-mart or any of its various divisions and subsidiaries, including Sam's Club, the State of Mississippi form [sic] January 1, 1995,", those seven being identified as Wendall Athunation, Bruce Bain, Andy Loftin, Craig McIntyre, Len Novel, Thomas Paggott and Jim West. In other words, defendants have presented proof that none of these persons was employed by Wal–Mart or Sam's within the six years preceding the date on which suit was filed.[4] Rodier states that another three of the defendants, Jimmy Walker, Brenda Williams and Michael Lewis, once worked for Wal–Mart but not within the six years preceding the filing of the complaint in this matter;[5] and that the last defendant, Alton Sandlin (identified in the complaint as Bill

---

**3.** Defendants have presented affidavits from John F. Antoon (who appears to have been incorrectly identified in the complaint as John Antwan), Angela M. Clark; Adrian Coker; Charles "Run" Coleman; Sean A. Copeland; Stephen Paul Haynes; Andy Lofton; Henry Kenneth W. Nunnery; Michael Parrott, who does not appear to be named as a defendant; Airfonzie Peterson, Jr. (identified in the complaint as Alfonzie Peterson); Silverio Rodriguez (identified in the complaint as Pepo Rodgriquez); Charles Walton Roe, Sr.; Bradley G. Sullivan; and C.W. Wilson.

The court notes that in their affidavits, each of the affiants includes a list of the plaintiffs in this case who were employed by them at one time or another; yet the vast majority of persons listed in their affidavits as having worked for them are not plaintiffs in this case at all. They do all state, however, that none of the "remaining" plaintiffs was ever employed in a store he/she managed.

**4.** The court would note, though, that one of these seven, Andy Loftin (Lofton) is one of the thirteen defendants who have presented affidavits attesting to which of the plaintiffs were employed in a store managed by him; thus, it appears that the information contained in Rodier's affidavit may not be entirely accurate.

**5.** Defendants argue in their brief that "there are numerous … named individual Defendants, who Wal–Mart has no record of ever working for Wal–Mart in Mississippi," and in support of this statement, cites Rodier's affidavit. Rodier, however, does not say that Athunation, Bain, Loften, McIntyre, Novel, Paggott and West *never worked* for Wal–Mart. He attests only that Wal–Mart has no record of their having worked for the company at any time since January 1, 1995. In the absence of *specific* proof, the court must assume that these persons have, in fact, worked for Wal–Mart in Mississippi at some point since plaintiffs have so alleged.

Sandlin), did not work for Wal–Mart in Mississippi in the three years preceding the date on which this suit was filed.

Thus, it appears that four of the individual defendants are not Mississippi citizens; another is appropriately considered a John Doe defendant; thirteen have presented uncontroverted proof that they did not commit any of the acts alleged by plaintiffs; three of the defendants did work for Wal–Mart or Sam's, but not within six years of the date on which plaintiffs filed suit; six more may or may not have worked for Wal–Mart or Sam's, but did not work for Wal–Mart or Sam's within six years preceding the date on which suit was filed; another defendant worked for Wal–Mart but not within three years of the date on which suit was filed; and no proof has been presented as to the status of a final defendant, Ken Herring.

Of course, defendants' purpose in presenting proof as to the dates of employment of those resident defendants from whom no affidavit has been presented is to substantiate defendants' contention that plaintiffs have no possibility of recovery against these defendants because any and all claims sought to be asserted against them would be barred by the applicable statutes of limitation. That is, defendants argue that since, realistically, the statute of limitations applicable to any of plaintiffs' claims can be no longer than three years, the fact that none of the named resident defendants (or at least none of those from whom no affidavit has been obtained) worked for Wal–Mart or Sam's within the three years preceding the date on which suit was filed—and even longer in the case of some defendants—means that no plaintiff can possibly have a viable claim against any of these individual defendants. However, while defendants' reasoning has a certain appeal and may ultimately be borne out by the proof, the court cannot conclude as a matter of law that any plaintiff's claim against any defendant is necessarily time-barred. Plaintiffs have specifically alleged that until May 2002, they were unaware and could not have discovered, even with the exercise of due diligence, that their time records had been altered over the course of their employment, and there is nothing to suggest to the court one way or the other whether this is, in fact, the case. In their complaint, plaintiffs have alleged that throughout the work week, the defendant store managers went into the computer system and deleted time from the plaintiffs' records so that the payroll records submitted to Wal–Mart or Sam's did not accurately reflect plaintiffs' time. There is no indication in the complaint as to whether the amounts of time deleted at any given time or in any given pay period were significant, so that the changes would or should have been noticeable, or were instead relatively insignificant, and hence more likely to have gone unnoticed. Moreover, plaintiffs also allege that during this same time, they were required to work "off the clock," which, logic would suggest, would have made it more difficult for them to keep track of their actual "on the clock" hours.[6] Thus, the court must conclude that there is a reasonable possibility that plaintiffs—or some of them—will be able to establish that their claims against one or more of the resident defendants are timely, despite being based on events that predated the filing of their suit by more than three (or more than six) years. *See American Bankers' Ins. Co. of*

---

6. Of course, to the extent that plaintiffs were required to work "off the clock," this is certainly something they knew about and could have timely sued for, and the claims related to, or based on that allegation, even if otherwise actionable, would indeed seem to be time-barred.

*Fla. v. Wells*, 819 So.2d 1196, 1201 (Miss. 2001) (applying discovery rule to fraud claim and observing that "[t]he relevant question is when did [plaintiff] discover he had a potential cause of action against the [defendant]"). Accordingly, the court concludes that defendants have not carried their burden to establish fraudulent joinder.

■ Subsequent to the filing of their notice of removal, and in fact, a day after plaintiffs had filed their motion to remand, defendants filed an amended notice of removal, asserting that removal was proper not only on the basis of diversity jurisdiction, but also on the basis of bankruptcy jurisdiction pursuant to 28 U.S.C. § 1334, which grants the federal courts exclusive jurisdiction over "all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or relating to cases under title 11." In their amended notice of removal, and in response to plaintiffs' motion to remand, defendants advise that seven of the plaintiffs have current or former bankruptcy cases which defendants contend are core proceedings, or which at least "relate to" this proceeding, and which therefore will support an exercise of bankruptcy jurisdiction by this court.

A review of the papers submitted by defendants in connection with their response to the motion to remand confirms that, in fact, the court does have "related to" bankruptcy jurisdiction on the basis of the bankruptcies of at least one, and potentially more plaintiffs who either had pending bankruptcies at the time the case was filed, or who filed for bankruptcy during the pendency of the case.[7] However, while the court could exercise jurisdiction over the case on the basis of these bankruptcies, in the exercise of its discretion and in accordance with 28 U.S.C. § 1452(b) and/or 28 U.S.C. § 1334(c),[8] it chooses not

---

7. Although defendants identify seven plaintiffs they claim have filed for bankruptcy protection, they have presented documentation only as to six plaintiffs. Of those, the evidence reflects that orders of discharge were entered in three of the plaintiffs' Chapter 7 cases months before this lawsuit was filed. Two other plaintiffs, Jerry Ford and Jason Wroten, filed their Chapter 13 petitions in April 2002 and June 2002, respectively, some months before this lawsuit was filed, and Helen Mace filed her Chapter 13 petition in April 2002, four months after this lawsuit was filed. Presumably, these plaintiffs' bankruptcy cases remain pending.

8. 28 U.S.C. § 1452(b) states that the court to which a case is removed on the basis of bankruptcy jurisdiction under 28 U.S.C. § 1334 "may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1334(c)(1) states that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

"Because the doctrines of discretionary abstention and equitable remand are very similar, there is an overlap between the two regarding factors for the court to consider." *P.O'B. Apollo Tacoma, L.P. v. TJX Cos., Inc.*, No. Civ. 3:02–CV–0222–H, 2002 WL 31246633, *1 (N.D.Tex.2002). They include:
(1) the effect or lack thereof on the efficient administration of the estate if the Court recommends [remand or] abstention;
(2) extent to which state law issues predominate over bankruptcy issues;
(3) difficult or unsettled nature of applicable law;
(4) presence of related proceeding commenced in state court or other non-bankruptcy proceeding;
(5) jurisdictional basis, if any, other than § 1334(c);
(6) degree of relatedness or remoteness of proceeding to main bankruptcy case;
(7) the substance rather than the form of an asserted core proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

to do so.[9] Simply put, this case is a non-core proceeding involving solely state law claims and issues which may readily be resolved in state court, over which the court otherwise lacks jurisdiction. There is, in the court's view, no practical benefit in retaining jurisdiction over the claims of the bankruptcy plaintiffs.

It is, therefore, ordered that plaintiffs' motion to remand is granted.

(9) the burden of the ...court's docket;
(10) the likelihood that the commencement of the proceeding in the [district] court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial;
(12) the presence in the proceeding of non-debtor parties;
(13) comity; and
(14) the possibility of prejudice to other parties in the action.

9. Although mandatory abstention requires that a timely motion be made by a party, *see* 28 U.S.C. § 1334(c)(2), permissive or discretionary abstention under § 1334(c)(1) may be raised by the court sua sponte, *Matter of Gober,* 100 F.3d 1195, 1207 n. 10 (5th Cir.1996), as may equitable remand under § 1452(b), which imposes no requirement of a motion by a party.